IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:12-CR-35-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DECARLOS GEORGE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on Defendant's Motion to Suppress evidence seized by law enforcement as a result of the search of Defendant's person on November 27, 2011. Defendant asserts that the frisk of his person violated the Fourth Amendment's proscription of unreasonable searches and seizures. For the reasons stated below, the Court denies Defendant's Motion to Suppress.

## BACKGROUND

On November 27, 2011, at approximately 3:30 a.m., Officer D.P. Roehrig of the Wilmington Police Department observed two vehicles make consecutive right turns at a red light. The second vehicle did not stop before making the right turn. It appeared to Officer Roehrig that the second vehicle was chasing the first. Officer Roehrig followed the second vehicle and observed the vehicle slow down and proceed on a circular route.

When another officer, Officer Poelling, pulled behind Officer Roehrig, the Officers initiated a stop of the vehicle for failing to stop at a red light. The subject vehicle pulled into the parking area of a convenience store. The store, according to Officer Roehrig's testimony, is centrally located in

a high-crime area in Wilmington, North Carolina. Office Roehrig stated that he has responded to many violent crimes in this area.

When Officer Roehrig began his initial approach to the vehicle, he noticed the subject vehicle contained four male occupants. Office Roehrig continued his approach to the vehicle with his weapon drawn and lowered along his left leg. Before approaching the driver's window, Officer Roehrig stopped at the back seat driver's side window to make an observation of the rear passengers. Defendant, seated directly behind the driver seat, was holding his driver's license up with his left hand while his right hand was on the seat next to him behind his right leg. Because Officer Roehrig could not see Defendant's right hand, he asked Defendant to place both of his hands in plain view. According to Officer Roehrig's testimony and incident report, Defendant delayed in immediately complying with Officer Roehrig's command, particularly by not immediately placing his right hand on the seat in front of him. Officer Roehrig stated that he had to make multiple requests before Defendant placed both of his hands in plain view and that Defendant appeared nervous and would not make eye contact with him.

Officer Roehrig proceeded to ask the driver questions about the failure to stop a red a light. Officer Roehrig noted that the driver's responses were inconsistent with his observations, specifically that the driver first denied chasing the first vehicle then subsequently stated that he was following his girlfriend. The driver also denied failing to stop at the red light until Officer Roehrig informed him that he had witnessed the entire incident.

After additional officers arrived at the scene, Defendant was removed from the vehicle by Officer Roehrig. As Defendant was exiting the vehicle, he dropped his cell phone and wallet on the ground. Before allowing Defendant to retrieve these items, Officer Roehrig conducted a protective frisk of Defendant. When conducting the patdown, he noticed an object that immediately felt like

a gun. Officer Roehrig orally announced the presence of a gun to the other officers and attempted to seize the firearm. Because Officer Roehrig could not locate the firearm within Defendant's garments, he requested the assistance of Officer K. Murphy. Defendant then told the Officers that the firearm was located in a pocket of his shorts that he was wearing under his pants. Defendant was subsequently charged with Possession of a Firearm by a Felon in violation of 18 U.S.C. § 922(g)(1).

On May 9, 2012, Defendant filed this Motion to Suppress evidence seized by law enforcement as a result of the search of Defendant's person on November 27, 2011. On July 27, 2012, the Court held a hearing on Defendant's Motion to Suppress.

## DISCUSSION

Defendant has not challenged the lawfulness of either the traffic stop or his subsequent removal from the vehicle. *See Whren v. United States*, 517 U.S. 806, 810 (1996) (finding that the stop of an automobile is reasonable where the police have probable cause to believe that a traffic violation occurred); *Maryland v. Wilson*, 519 U.S. 408 (1997) (an officer making a traffic stop may order passengers to get out of the car pending completion of the stop). However, he contends that Officer Roehrig unlawfully conducted a protective frisk of his person because the officers did not have a reasonable basis to suspect he was armed and dangerous.

When an officer has reasonable suspicion to believe criminal activity may be afoot and the person he is dealing may be armed and presently dangerous, the officer is entitled for the safety of himself and others in the area to conduct a carefully limited search of the outer clothing of such person in an attempt to discover weapons which might be used to assault him. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). In *Arizona v. Johnson*, 555 U.S. 323 (2009), the Supreme Court extended the "stop and frisk" rule announced in *Terry* to passengers in a routine traffic stop. *United States v. Powell*, 666 F.3d 180, 185 (4th Cir. 2011).

Reasonable suspicion has been defined as a particularized and objective basis for believing that the person to be frisked is armed and dangerous. *Powell*, 666 F.3d at 186 (4th Cir. 2011) (citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* (citing *Terry*, 392 U.S. at 27).

When a court makes a reasonable suspicion determination, it considers the totality of the circumstances of the individual case to decide whether the detaining officer had a particularized and objective basis for suspecting legal wrongdoing. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotation omitted). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* The Government must articulate facts sufficient to establish reasonable suspicion, "and although the standard of proof is less demanding than that for probable cause, the government must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." *Powell*, 666 F.3d at 186 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Moreover, while each factor in a reasonable suspicion analysis may be insufficient to evidence reasonable suspicion when considered individually, when viewed together, they may support reasonable suspicion of criminal activity and that a person is armed. *United States v. Branch*, 537 F.3d 328, 339 (4th Cir. 2008).

Totality of the Circumstances

In applying the totality of the circumstances test, courts look to numerous factors including the time, place and purpose of the encounter, *United States v. Weaver*, 282 F.3d 302, 310 (4th Cir. 2002); the overall context of the traffic stop, *United States v. Digiovanni*, 650 F.3d 498, 514 (4th Cir.

2011); Defendant's nervous, evasive demeanor, *Branch*, 537 F.3d at 338; Defendant's delay in complying with the Officer's command to place his hands in plain view, *United States v. Mayo*, 361 F.3d 802, 807 (4th Cir. 2004) and contradictory and inconsistent statements obtained from the driver of the vehicle, *Powell*, 666 F.3d at 188.

## I. Overall Context of the Traffic Stop

An area's disposition toward criminal activity is an articulable fact that may be considered along with more particularized factors to support a reasonable suspicion. *United States v. Sprinkle*, 106 F.3d 613, 617 (4th Cir. 1997) (citations omitted). Furthermore, the danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. *Wilson*, 519 U.S. at 414. Officer Roehrig testified that the traffic stop occurred at 3:30 a.m. in a high-crime area. Officer Roehrig also stated that he has responded to several dozen violent crimes in that area. Before approaching the car, Officer Roehrig noticed that the vehicle contained four male occupants, which rendered himself and Officer Poelling outnumbered. These circumstances together prompted Officer Roehrig to approach the vehicle with his weapon drawn and lowered along his left leg. When examining the traffic stop as a whole, the Court finds these circumstances to weigh in favor of a finding of reasonable suspicion.

## II. Demeanor of Defendant

"It is established that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *United States v. Branch*, 537 F.3d 328, 338 (4th Cir. 2008). Officer Roehrig noted that Defendant appeared nervous and would not make eye contact with him. Although Defendant contests this observation, the Court finds Officer Roehrig's recollection to be more credible than that of Defendant.

In determining Defendant's credibility, the Court may consider his demeanor and inflection and whether his story is internally consistent and plausible on its face. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985). At the suppression hearing, Officer Roehrig testified that Defendant appeared nervous and would not make eye contact with him. He further stated that it took multiple requests for Defendant to comply with his command to place his right hand in plain view. To the contrary, Defendant testified that he did not delay in complying with Officer Roehrig's request to place his hands on the seat in front of him and stated that he looked Officer Roehrig directly in the eyes and did not emit evasive or suspicious behavior. Of note, Defendant continued to say that he found the subject firearm on the night of his arrest when his cellular phone dropped and emitted light that was lying on the sidewalk. The Court also observed a discrepancy between Defendant's statements to law enforcement on the night of his arrest and Defendant's testimony at the suppression hearing. Particularly, Defendant testified at the hearing that he had just finished work when he was picked up by the subject vehicle. Conversely, Defendant stated to Officer Roehrig on November, 27, 2011, that his place of employment had closed at 11:30 p.m. and that he had been at a club before being picked up by the subject vehicle. This inconsistency coupled with the implausibility of Defendant's statement concerning his obtainment of the firearm has detracted credibility from Defendant's testimony. In light of the factors a court may consider in making a credibility determination, the Court finds Defendant's testimony not credible. As such, the Court finds Officer Roehrig's observation of Defendant's physical demeanor, and his testimony regarding Defendant's hand placement, to be more credible than Defendant's testimony to the contrary.

### III. Refusal to Cooperate

A suspect's refusal to cooperate with police, alone, does not satisfy *Terry* stop requirements, but may be considered in a totality of the circumstances analysis. *Mayo*, 361 F.3d at 806. The *Mayo*

Court, in finding that officers had a reasonable suspicion to believe the suspect was armed and dangerous, stated, "[i]n this case there is evidence that . . . in the view of the officer, the defendant was acting in such a way as . . . consistent with somebody who was carrying a weapon." *Mayo*, 361 F.3d at 807.

Officer Roehrig testified that he could not see Defendant's right hand when he initially approached the vehicle. Officer Roehrig then asked Defendant to place both of his hands on the seat cushion in front of him. Officer Roehrig noted that he had to ask Defendant multiple times to show both of his hands before finally complying. Although Defendant denies a delay in his compliance, the Court, as discussed above, has assigned little weight to the credibility of Defendant's testimony. Therefore, the Court finds Defendant's deliberate noncompliance to weigh in favor of a finding of reasonable suspicion.

## IV. False Statements

Additionally, when applying the totality of the circumstances test, courts may also look to the officer's statements to others present during the encounter. *Weaver*, 282 F.3d at 310. Furthermore, false statements may also be considered, but without more, will be typically insufficient for a finding of reasonable suspicion. *Powell*, 666 F.3d at 189.

Officer Roehrig received responses from the driver of the vehicle that were inconsistent with his observations, specifically that the driver first denied chasing the first car then subsequently stated that he was following his girlfriend. Moreover, the driver denied failing to stop at the red light until Officer Roehrig told him that he had witnessed the entire incident. As such, the Court finds this final factor to weigh in favor of a finding of reasonable suspicion.

*United States v. Powell*

Finally, the Court finds this case factually distinguishable from the Fourth Circuit's recent opinion in *United States v. Powell*. In *Powell*, officers participated in amicable conversation with the suspect, provided the suspect with the opportunity to leave the scene, and received caution data about the suspect's prior criminal history. *Powell*, 666 F.3d at 180. Based on the foregoing, the Fourth Circuit held that the police officers did not have reasonable suspicion for suspecting that defendant was armed and dangerous. *Id.*

In the instant action, Officer Roehrig's interaction with the driver and Defendant created a heightened suspicion that was not present in *Powell*. The driver's contradictory remarks together with Defendant's behavior and delayed compliance created a situation of increased caution. Initially and after several requests, Officer Roehrig could not see Defendant's hand. *See United States v. Foster*, 634 F.3d 243 (4th Cir. 2011) (finding no reasonable suspicion where, among other things, officers could see both of the suspect's hands). Moreover, the initial stop in this case was more extensive than the stop for an equipment violation in *Powell*. Here, the Officer followed the subject vehicle while it proceeded on a circuitous route through a high-crime area. Also, Defendant's exit from the vehicle along with his attempted downward movement to collect his fallen belongings supplied Officer Roehrig with the same basis as officers had in *Raymond* for conducting a patdown search: the appearance that the suspect might be concealing a weapon. *United States v. Raymond*, 152 F.3d 309 (4th Cir. 1998) (holding that defendant's strange exit from the car, as if he were trying to conceal something under his jacket, and the awkward way in which he leaned against the car while talking to the officers, gave the troopers a reasonable basis for a conducting a patdown search). Such circumstances were not present in *Powell* and provide justification above what existed in *Raymond* for a finding of reasonable suspicion here.

After considering the totality of the circumstances, the Court finds that a reasonably prudent officer in the aforementioned circumstances would be warranted in a belief that Defendant was armed and dangerous on the night in question and, accordingly, that a protective frisk of Defendant was therefore permissible under the Fourth Amendment.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is DENIED.

SO ORDERED.

This the 13 day of August, 2012.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE